IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-cv-00116-FL

| | |
|---|---|
| DALE BALDWIN and ) | |
| JUNIO CAESAR FREITAS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TRADESMEN INTERNATIONAL, INC. ) | |
| and UNIFIED CLEANROOM ) | |
| CONSTRUCTION, LLC, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the court on the motions of defendant Tradesmen International, Inc. ("Tradesmen") (DE # 19) and defendant Unified Cleanroom Construction, LLC ("UCC") (DE # 21) to dismiss plaintiffs' first amended complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiffs' motion for leave to file a second amended complaint (DE # 32). The issues have been fully briefed and are ripe for ruling. For the reasons stated below, the court will grant defendants' motions to dismiss and deny plaintiffs' motion to amend.

## STATEMENT OF THE CASE

On March 7, 2012, this action was removed to this court from Wake County Superior Court by UCC, and Tradesmen subsequently consented to the removal. In the initial complaint, plaintiffs alleged claims for same-sex sexual harassment and retaliation in violation of the public policy of North Carolina, and for negligence, specifically negligent retention and supervision. Both defendants filed motions to dismiss, and plaintiffs responded by filing an amended complaint ("first

amended complaint").[1] Defendants each filed a motion to dismiss plaintiffs' first amended complaint. Plaintiffs, after receiving an extension of time to respond to defendants' motions to dismiss, filed a second amended complaint. Plaintiffs subsequently withdrew their second amended complaint, acknowledging that it was improvidently filed without leave of court or the consent of defendants, and filed a motion for leave to file a second amended complaint, to which defendants responded in opposition. Pursuant to the court's August 22, 2012 order, plaintiffs filed a response to defendants' motions to dismiss the first amended complaint, also addressing therein the arguments raised by defendants in opposition to plaintiffs' motion for leave to file a second amended complaint. The court, on the consent motion of defendants, has stayed conduct of the Rule 26(f) conference, entry of a scheduling order, and discovery pending ruling on the instant motions.

## STATEMENT OF THE FACTS

The facts as alleged by plaintiffs are as follows.[2] Plaintiff Dale Baldwin ("Baldwin") is a resident of Orange County, North Carolina, and plaintiff Junio Cesar Freitas ("Freitas") is a resident of Wake County, North Carolina. Defendant Tradesmen is an Ohio corporation, and defendant UCC is a Wisconsin limited liability company. UCC is in the business of clean room, dry room, and cold storage construction, and Tradesmen is in the business of supplying a skilled labor force to construction companies such as UCC.

Baldwin and Freitas (collectively, "plaintiffs") were employed by Tradesmen. On or about October 5, 2011, Tradesmen assigned Baldwin to work on a UCC construction site in Durham, North Carolina (the "site"). Tradesmen also assigned Freitas to the site where Baldwin was working.

---

[1] Defendants jointly stipulated that the filing, as a matter of right, of plaintiffs' first amended complaint rendered moot their motions to dismiss plaintiffs' initial complaint.

[2] The facts alleged in plaintiffs' first amended complaint and proposed second amended complaint are not materially different.

2

Plaintiffs' supervisor at Tradesmen was Kevin Ragland ("Ragland"), but while working at the site, plaintiffs were supervised by Joel Abue ("Abue"), a UCC employee and the site superintendent.

Abue made inappropriate comments directed to Baldwin, such as asking Baldwin, "are you gay?" in front of Baldwin's co-workers. Baldwin asked Abue to stop harassing him, but Abue's inappropriate comments to Baldwin escalated to as many as five or six occurrences a day. On one occasion, Abue, who is alleged upon information and belief to be a homosexual male, requested that Baldwin, a heterosexual male, come to his hotel room late one night afer work. Baldwin refused, and the harassment again escalated. Abue began following Baldwin at work, standing behind him and making inappropriate gestures. On other occasions, Abue asked Baldwin "do you still love me?" and stated "I heard you said my [ ] taste like chocolate." Abue's actions continued for approximately three weeks on a daily basis, and Baldwin became extremely uncomfortable on the site, suffering embarrassment, humiliation, and distress.

During the same three week period, Freitas, a heterosexual male, was likewise subjected to inappropriate gestures, comments, and behavior of a sexual nature by Abue. On one occasion, Abue requested that Freitas ride with him on an unspecified errand. Once in the vehicle, Abue thanked Freitas for coming and offered to pay him for his time with either money or a "blow job." Freitas was offended by and objected to Abue's inappropriate conduct.

Plaintiffs reported the allegations of sexual harassment to Ragland, pursuant to the requirements of Tradesmen's Field Employee Policy Manual, which set forth grievance procedures pertaining to sexual harassment in the work place. Ragland conducted an independent investigation and learned that other employees had experienced similar conduct by Abue and considered the work environment to be hostile.

Baldwin refused to return to the site, because he was unwilling to subject himself to further

3

sexual harassment. Baldwin and Freitas have not been assigned to any projects by Tradesmen since reporting Abue's alleged sexual harassment to Ragland and have suffered financial hardship as a result. Tradesmen opposed Baldwin's claim for unemployment benefits, claiming that Baldwin failed to complete his assignment at the site. Plaintiffs seek compensatory and punitive damages, as well as costs and reasonable attorney's fees.

## COURT'S DISCUSSION

### I. Standards of Review

Rule 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). On a 12(b)(6) motion, the court's consideration is limited to only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

Rule 15 directs that leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

4

futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Amendment is futile if the proposed amended claim cannot withstand a motion to dismiss. See Perkins v. United States, 55 F.3d 910, 917 (4th Cir. 1995).

## II. Analysis

### A. Plaintiffs' Motion to Amend

Plaintiffs seek to file a second amended complaint in order to add a simple negligence claim against both defendants and to assert additional facts in support of their negligent retention and supervision claims. UCC opposes the motion on the grounds of futility, undue delay, and prejudice, and Tradesmen opposes the motion based on futility. The court finds UCC's assertions of undue delay and prejudice unavailing, where plaintiffs attempted to amend their complaint only twenty-one days after defendants' motions to dismiss the first amended complaint were filed, and the entry of a scheduling order and discovery in this matter has been stayed pending the court's determination of the instant motions. See Ward Elecs. Serv., Inc. v. First Commercial Bank, 819 F.2d 496, 497-98 (4th Cir. 1987) (concluding that denial of motion to amend was an abuse of discretion, where the action was early in the pretrial process and there was no finding of futility). Therefore, the court turns to the question of futility as to each proposed amended claim.

#### 1. Negligence Claim

Both UCC and Tradesmen contend that North Carolina does not recognize a cause of action by an employee for the ordinary negligence of an employer. Tradesmen alternatively contends that even if negligence was a recognized claim in the employment context, it cannot be held liable for failing to maintain a harassment free environment at a workplace controlled by a third-party, namely UCC, and that despite its lack of duty, the allegations indicate that Tradesmen did, in fact, investigate plaintiffs' complaints and that the harassment thereafter stopped. Finally, Tradesmen contends that

5

plaintiffs' negligence claim is precluded by the North Carolina Workers' Compensation Act. UCC alternatively contends that plaintiffs' negligence claim is inherently contradictory and merely a recasting of the negligent retention claim. The grounds for plaintiffs' negligence claim against Tradesmen and UCC are distinct and, therefore, will be considered independently.

### i. Negligence Claim Against Tradesmen

Plaintiffs' negligence claim against Tradesmen is based on Ragland's alleged failure to exercise reasonable care in addressing plaintiffs' complaints about Abue's harassment. Plaintiffs allege in their proposed second amended complaint that Tradesmen, as plaintiffs' employer, had a duty to use reasonable care to provide a safe workplace; that Tradesmen breached its duty by its agent Ragland's failure to exercise reasonable care in addressing the actions of Abue; that the breach was a direct result of Ragland's negligence; and that due to Tradesmen's negligence, plaintiffs suffered compensatory damages, pain and suffering, and mental anguish. Tradesmen contends that plaintiffs' negligence claim suffers from multiple infirmities, outlined above, but the court finds that the Workers' Compensation Act is dispositive.

The North Carolina Workers' Compensation Act (the "act") provides that its remedies are exclusive where it applies. N.C. Gen. Stat. § 97-10.1. North Carolina courts have determined that to fall within the scope of the act, an injury must (1) be caused by an accident; (2) arise out of the employment; and (3) be sustained in the course of employment. See Wake Cnty. Hosp. Sys., Inc. v. Safety Nat. Cas. Corp., 127 N.C. App. 33, 39, 487 S.E.2d 789, 792 (1997) (quoting Gallimore v. Marilyn's Shoes, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977)). In the recent case of Shaw v. Goodyear Tire & Rubber Co., 737 S.E.2d 168 (N.C. Ct. App. 2013), the North Carolina Court of Appeals concluded that a negligence based claim for an employer's mishandling of a sexual harassment complaint, comparable to the claim alleged here by plaintiffs against Tradesmen, fell

6

within the act's reach. 737 S.E.2d at 177-78.

The plaintiff in Shaw had complained that she was being verbally harassed in the workplace by her supervisor. Id. at 170. Despite plaintiff's complaints, her supervisor remained in his position and the harassment continued until plaintiff was terminated. Id. at 171. Plaintiff brought a number of claims against her employer, including claims for wrongful discharge, intentional infliction of emotional distress, and negligent infliction of emotional distress. Id. Only plaintiff's claims for wrongful discharge and negligent infliction, based on her employer's negligent handling of plaintiff's harassment complaint, went to trial, and the jury awarded plaintiff damages only on her negligent infliction claim. Id. at 172. On appeal, the court considered whether the negligent infliction claim was precluded by the act.

The court first noted that the act provides the exclusive remedies for an employee against an employer for claims covered by the act. Id. at 173 (quoting McAllister v. Cone Mills Corp., 88 N.C. App. 577, 580, 364 S.E.2d 186, 188 (1988) and citing Freeman v. SCM Corp., 311 N.C. 294, 295–96, 316 S.E.2d 81, 82 (1984)). The court next recognized one narrow exception to the exclusivity provision, created by the North Carolina Supreme Court in Woodson v. Rowland, 329 N.C. 330, 407 S.E.2d 222 (1991), for "limited cases where injury or death was the result of intentional conduct by an employer which the employer knew was substantially certain to cause serious injury or death." Id. at 176 (citing Wake Cnty. Hosp. Sys., 487 S.E.2d at 793). The court concluded that the Woodson exception did not apply, because negligence, even if willful and wanton, is insufficient to satisfy Woodson's high standard, which requires that the conduct be "so egregious as to be tantamount to an intentional tort." Id.

Finally, the court concluded that plaintiff's negligent infliction claim was within the scope of the act, reasoning as follows:

7

> [P]laintiff's [negligent infliction] claim caused by defendant's mishandling of her complaint would fall within the purview of the Industrial Commission as her emotional distress is an "injury" recognized by the Workers Compensation Act. Plaintiff's "injury was caused by an *accident* " as defendant's mishandling of her complaint was "an unlooked for and untoward event which is not expected or designed by the injured employee [.]" Plaintiff's "injury arose out of the employment" in that complaining to an employer about harassment at work and the risk that the employer may not handle it properly "is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment." Plaintiff's "injury was sustained in the course of employment" in that the mishandling of her complaints occurred while plaintiff was working for defendant.

Id. at 177-78 (internal citations omitted). The court finds that plaintiffs' negligence claim against Tradesmen is materially indistinguishable from the negligent infliction claim in Shaw.

Here, plaintiffs contend that Tradesmen failed to exercise reasonable care in addressing the harassment carried out by Abue, just as the Shaw defendant was alleged to have mishandled its employee's harassment complaints. Plaintiffs contend that the Woodson court recognized that injury resulting from willful, wanton and reckless negligence should be treated as an intentional tort for purposes of the act, thereby placing such an injury outside the act's scope. Plaintiffs misapprehend the Woodson court's analysis.

In discussing prior cases dealing with the act, the Woodson court recognized that in a case involving *co-employee* liability, the court found that "willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act." 407 S.E.2d at 227 (quoting Pleasant v. Johnson, 312 N.C. 710, 325 S.E.2d 244 (1985)). The Woodson court then acknowledged that the Pleasant court expressly refused to consider whether the same rationale would apply to *employer* misconduct. Id. (citing Pleasant, 325 S.E.2d at 250). The Woodson court went on to create the narrow exception that "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is

8

injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer." Id. at 228. Plaintiffs' proposed negligence claim against Tradesmen falls far short of the high degree of negligence required by Woodson. See Shaw, 737 S.E. 2d at 176 (concluding that willful and wanton negligence is insufficient to satisfy Woodson and noting that the court was "unaware of a single litigant in any case which has been subject to appellate review who has successfully pursued a Woodson claim since the exception to the exclusivity provisions was set out in 1991").

The court concludes that plaintiffs' proposed negligence claim against Tradesmen falls within the scope of the North Carolina Workers' Compensation Act and is not excluded by Woodson. Thus, the act provides plaintiffs with the exclusive remedy for the alleged negligence on the part of Tradesmen in dealing with plaintiffs' harassment complaints, rendering futile the amendment of the complaint in this case to include such a claim.

### ii. Negligence Claim Against UCC

Plaintiffs' negligence claim against UCC is materially different from its claim against Tradesmen, in that the claim against UCC is based directly on the sexual harassment by Abue, and not the mishandling of plaintiffs' complaints. North Carolina courts have distinguished between the harassing conduct itself and the employer's handling of such conduct, concluding that the former is not within scope of the Workers' Compensation Act, because "[s]exual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to which the employee could be equally exposed outside the employment." Hogan v. Forsyth Country Club Co., 79 N.C. App. 483, 496, 340 S.E.2d 116, 124 (1986) (citing Gallimore, 292 N.C. 399, 233 S.E.2d 529). UCC has not argued to the contrary. However, while the negligence claim against UCC may not be barred by the act, the court finds that the allegations of the complaint are insufficient to state

a claim for negligence against UCC.

Plaintiffs allege in their proposed second amended complaint that UCC, as plaintiffs' employer, had a duty to use reasonable care to provide a safe workplace; that UCC breached its duty by its agent Abue's conduct; that the breach was a direct result of Abue's negligence; and that as a result, plaintiffs suffered compensatory damages, pain and suffering, and mental anguish. UCC contends that plaintiffs' claim must fail because it is inherently contradictory in alleging intentional conduct as a basis for negligence. The court agrees.

The allegations of plaintiffs' complaint clearly indicate a pattern of intentional conduct on the part of Abue, where Abue is alleged to have repeatedly directed sexually explicit comments at plaintiffs over the course of three weeks. See Pl.s' Proposed Second Am. Compl. ¶¶ 14-20, 34-38, 40, 60-61. See also Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (finding that "acts of sexual harassment are 'inherently intentional.'") (quoting Thomas v. N. Telecom, Inc., 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000)). "Without question, basing a claim upon intentional conduct and simply labeling it as negligent is untenable as an attempt to state a cause of action for negligence." Riepe v. Sarstedt, Inc., No. 5:09-CV-00104, 2010 WL 3326691, at *4 (W.D.N.C. Aug. 23, 2010).

Accordingly, plaintiffs' allegations of sexual harassment, which here constitute intentional conduct, are insufficient to support a claim for negligence against UCC. See Mitchell v. Lydall, Inc., 16 F.3d 410 (4th Cir. 1994) (concluding, in the context of a negligent infliction of emotional distress claim, that plaintiff failed to state a claim where the complaint alleged "merely a single, conclusory allegation that [defendant] was negligent [and] the material factual allegations charge[d] nothing but intentional acts by [defendant.]"); Locklear v. Person Cnty. Bd. of Educ., No. 1:05CV00255, 2006 WL 1743460, at *17 (M.D.N.C. June 22, 2006) (dismissing claim of negligence where factual

10

allegations charged only intentional conduct by defendants).

The court concludes that plaintiffs' proposed second amended complaint fails to state a negligence claim against UCC and would, thus, not survive a motion to dismiss, rendering futile the amendment of the complaint in this case to include such a claim.

## 2. Negligent Retention and Negligent Supervision Claim

Plaintiffs allege that defendants were negligent in their training and supervision of employees with regards to sexual harassment and in the retention of Abue after becoming aware of his conduct. Defendants both argued in their motions to dismiss that to state a claim for negligent retention and supervision, a plaintiff must allege that the defendant's employee committed an underlying tort and that plaintiffs have failed to do so in this case. In an apparent attempt to cure the alleged deficiency, plaintiffs' proposed second amended complaint contains the two negligence claims discussed above and added allegations with respect to the negligent retention and supervision claims that Abue was negligent, that his tortious behavior was the cause of plaintiffs' injuries, and that defendants were negligent by continuing to employ Abue. See Proposed Second Am. Compl. ¶ 65, 66.

Under North Carolina law, it is "[a]n essential element" of a claim for negligent retention or supervision "that an employee of the employer 'committed a tortious act resulting in plaintiffs' injuries.'" Hartsell v. Duplex Products, Inc., 123 F.3d 766, 774 (4th Cir. 1997) (quoting Waddle v. Sparks, 331 N.C. 73, 414 S.E.2d 22, 29 (1992)). The Fourth Circuit has previously determined that sexual harassment cannot serve as the "tortious act" for purposes of stating a negligent retention or a supervision claim, because sexual harassment is not a common law tort in North Carolina. See McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir.2003). As discussed above, plaintiffs have failed to state a negligence claim against defendants. Furthermore, the additional facts alleged in connection with the negligent retention and negligent supervision claim are, in

11

essence, a restatement of the now rejected negligence claims. Finally, the court declines plaintiffs' invitation to infer from the allegations torts of assault and battery, which were not pled. Accordingly, the court concludes that plaintiffs' proposed second amended complaint fails to allege that an employee of defendants committed an underlying tortious act and, thus, that the proposed amendments are futile.

In sum, the court concludes that the amendments proposed in plaintiffs' second amended complaint are futile, and the motion to amend will be denied.

### B. Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint

#### 1. Violation of Public Policy Claim

Plaintiffs allege that both defendants violated the public policy of North Carolina, specifically N.C. Gen. Stat. § 143–422.2, by condoning or failing to prevent a sexually hostile work environment, discrimination, and retaliation. Plaintiffs' claim is based on the North Carolina Equal Employment Practices Act ("NCEEPA"), which provides in pertinent part as follows:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143–422.2.

The Fourth Circuit has held that the NCEEPA does not create a private cause of action for sexual harassment or retaliation. See McLean v. Patten Communities, Inc., 332 F.3d 714, 719 (4th Cir. 2003); Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000). However, the Fourth Circuit has recognized that "a plaintiff does have a private cause of action under North Carolina common law for violation of public policy, specifically NCEEPA, when an employee is discharged because she has refused to accede to the sexual advances of her supervisor." Townsend v. Shook,

12

323 F. App'x 245, 251 (4th Cir. 2009) (citing McLean, 332 F.3d at 722). The Fourth Circuit has explained that the determinative factor, distinguishing McLean from Smith, is that the claim allowed in McLean alleged a wrongful discharge and not simply sexual harassment. Id.

In the present case, there is no allegation that the employment of either plaintiff was actually terminated, and plaintiffs concede as much. Plaintiffs argue instead that they were constructively discharged, because they were not assigned to any further projects after they complained about the sexual harassment to their supervisor. Plaintiffs further argue that constructive discharge is sufficient to support a wrongful discharge claim based on public policy, citing the North Carolina Supreme Court's decision in Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 381 S.E.2d 445 (1989).

In Coman, the court addressed whether to adopt a public policy exception to the employee-at-will doctrine by recognizing a cause of action for wrongful termination. Id. at 175. The plaintiff in Coman was a long distance truck driver, who had been directed by the defendant employer to drive an amount of time in excess of federal regulations and to falsify travel logs to cover up the violations. Plaintiff refused to do so and was told that his pay would be reduced at least fifty percent, which the court noted was "tantamount to a discharge of plaintiff." Id. at 173-74. The court concluded that the alleged conduct of the defendant violated North Carolina's public policy and that the complaint stated a cause of action for wrongful discharge. Id. at 175. While the North Carolina Supreme Court did not expressly characterize the claim as one for constructive discharge, plaintiffs urge the court to interpret Coman to allow a constructive discharge to serve as the basis for a wrongful discharge claim.

It is far from clear that this was the North Carolina Supreme Court's intent. In the subsequent case of Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531 (2005), the North Carolina

13

Supreme Court reversed the court of appeals' decision allowing a wrongful discharge claim where the termination was constructive. The court adopted the dissenting judge's opinion from the lower court's decision. The dissenting judge offered alternative grounds for disallowing the plaintiff's wrongful discharge claim based on constructive discharge: (1) that Coman had been read too broadly and that North Carolina does not recognize a claim for wrongful discharge in violation of public policy, based on hostile work environment or retaliation, where the termination is a constructive termination; and (2) that even assuming North Carolina recognized such a claim, the employee did not establish the deliberateness element of such a claim. See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 43, 598 S.E.2d 151, 159 (2004) (McCullough, J., dissenting), rev'd, 359 N.C. 625, 614 S.E.2d 531 (2005) (adopting Judge McCullough's dissent).

The issue at hand is unsettled in the North Carolina state courts. See Parker v. D.R. Kincaid Chair Co., Inc., No. 5:10CV97-V, 2011 WL 3347905, at *6 (W.D.N.C. Aug. 2, 2011) ("North Carolina courts have offered conflicting guidance on whether a constructive discharge claim can stand under the NCEEPA . . . ."). However, the majority of North Carolina federal courts have not read Coman so broadly as to permit a wrongful discharge claim where the plaintiff was not actually discharged, but instead was constructively discharged. See e.g., Mitchell v. Bandag, Inc., 147 F. Supp. 2d 395, 400 (E.D.N.C. 1998) ("North Carolina courts have not expanded the public policy exception to the employment-at-will doctrine to include claims of constructive discharge.").

Moreover, the Fourth Circuit has not interpreted North Carolina's claim of wrongful discharge to include constructive discharge. See Jones v. Duke Energy Corp., 43 Fed. App'x 599, 600 (4th Cir. 2002) (rejecting plaintiff's argument that there is no rational distinction between claims for constructive discharge and wrongful discharge; "North Carolina courts and federal courts applying North Carolina law have made that very distinction, by finding repeatedly that no private

14

cause of action exists for . . . constructive discharge in violation of public policy."). Accordingly, the court finds that constructive discharge cannot serve as a basis for plaintiffs' public policy claim, and it will be dismissed as to both Tradesmen and UCC.[3]

### 2. Negligent Retention and Negligent Supervision Claim

Plaintiffs allege that both defendants failed to properly train and supervise their employees with regards to sexual harassment in the workplace and were negligent in not terminating Abue. As discussed in detail above, see supra § II.A.2., plaintiffs have failed to plead the required element that an employee of defendants committed an underlying tortious act. Accordingly, the negligent supervision and negligent retention claims will be dismissed as to both Tradesmen and UCC.[4]

In sum, the court concludes that plaintiffs have failed to state a claim for which relief can be granted on the basis of public policy or negligent retention and negligent supervision, and the first amended complaint will be dismissed.

### CONCLUSION

Based on the foregoing, defendants' motions to dismiss (DE # 19 & 21) plaintiffs' first amended complaint are GRANTED, and plaintiffs' motion for leave to file a second amended complaint (DE # 32) is DENIED. The Clerk of Court is DIRECTED to close the case.

SO ORDERED, this **22ⁿᵈ** day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge

---

[3] The court also notes that plaintiffs conceded their public policy claim as to UCC in their response to the motions to dismiss. See Pl.s' Mem. in Opp'n to Def.s' Mots. to Dismiss at 7.

[4] The court also notes that plaintiffs conceded their negligent retention and supervision claim as to Tradesmen in their response to the motions to dismiss. See Pl.s' Mem. in Opp'n to Def.s' Mots. to Dismiss at 6.

15